Smith v. Commonwealth.

CASE 4—DEFENDANT CONVICTED OF MANSLAUGHTER UNDER AN INDICT-
MENT FOR MURDER.—MARCH 12.

# Smith v. Commonwealth.

APPEAL FROM BELL CIRCUIT COURT.

DEFENDANT CONVICTED OF MANSLAUGHTER AND APPEALS.   AFFIRMED.

CRIMINAL LAW—CHANGE OF VENUE—EXHAUSTION OF POWER TO TRANS-
FER—CONSENT OF COUNSEL—RATIFICATION BY ACCUSED—HOMICIDE
—PUNISHMENT—HARMLESS ERROR IN INSTRUCTION—DYING DEC-
LARATION—ADMISSIBILITY.

Held:   1. Where a felony prosecution was transferred from one cir-
cuit court to another, and, upon appeal from a judgment of con-
viction rendered by the latter court, the judgment was reversed
and the cause remanded, with direction to set aside the order of
transfer, and to then transfer the case to some county which was
not objectionable, an order remanding the case to the court
whence it came, and a consent order by that court transferring
the case to another county, were a substantial compliance with
the opinion.

2. Defendant in a prosecution for homicide can not complain of an
order to transfer the case to another circuit court, purport-
ing to have been made by consent of his counsel, upon the
ground that he was not present when the order was made,
as he ratified the action of his counsel by failing to make any
objection on that ground until after trial and verdict, though ob-
jecting on another ground.

3. Though Kentucky Statutes, section 1102, provides that there shall
not be more than one order of removal of the same cause at
the instance of the same party, the case, when remanded to the
court whence it came, in obedience to the direction of the court
of appeals, stood as if it had never been removed, and the
court then had power to make another removal.

4. An instruction directing the jury, if it should find defendant
guilty of manslaughter, to fix his punishment "at confinement in
the State penitentiary for not less than two years, or more than
twenty-one years," in their discretion, was not misleading, though
the word "nor" should have been used instead of "or."

5. The mere fact that deceased, at the time he made a statement as
to the killing, expressed the belief that he would not recover,
was not sufficient to make it admissible as his dying declaration.

Smith v. Commonwealth.

6. Deceased having, at a time when he stated that he could not live over an hour, confirmed a statement previously made by him, the statement was thereby rendered admissible as his dying declaration.

7. The testimony of a bystander that he believed from demonstrations made by deceased that he was about to hurt defendant was not admissible for defendant.

N. B. HAYS, FOR APPELLANT.

R. J. BRECKINRIDGE, FOR COMMONWEALTH.

(No briefs.)

OPINION OF THE COURT BY JUDGE DURELLE—AFFIRMING.

The appellant was originally indicted in Harlan county for the murder of S. T. Day. Upon the application of the Commonwealth, a change of venue was granted to Letcher county. The order transferring the case to Letcher, and the refusal of the court to permit affidavits to be filed showing objections to Letcher county, were relied on as ground for reversal upon a former appeal. Smith v. Com., 108 Ky., 53 (21 R., 1470), (55 S. W., 718). Upon that appeal the court did not decide whether the case should be reversed for that action, but said: "As, therefore, the case must be reversed upon another ground, the court on its return will set aside the order transferring to Letcher, and make an order transferring to some county not in this respect objectionable." As the case came to this court on appeal from a judgment of the Letcher circuit court, the mandate was, of course, filed in that court. In accordance with the opinion of this court, an order was made setting aside the judgment, and transferring the case back from the Letcher circuit court to the Harlan circuit court. The opinion directed that the order transferring to Letcher county should be set aside. If the direction in the opinion had been literally followed, the setting aside of the order transferring to Letcher county would have put the case in the county from which it had been trans-

Smith v. Commonwealth.

ferred,—that is Harlan county,—which' was exactly what was effected by the order actually made, by which the case was transferred back to Harlan county. The opinion proceeded to direct the court to make an order transferring to some county not objectionable. That remained to be done. The court accordingly transferred the case to Bell county.

By appellant it is insisted that the transfer back to Harlan county exhausted the power of the circuit court under the direction of the opinion of this court. We do not think so. The court was first directed to set aside the order transferring to Letcher, and the effect of such an order was accomplished by transferring it back to Harlan. It remained then to send it to an unobjectionable county, and this was attempted to be accomplished by sending it to Bell.

It is also objected that the court erred in transferring the case to Bell county after the objections to that county had been adjudged sufficient by an order of the lower court, and by the former opinion of this court. The order of transfer, however, recites that it was made, "counsel for the defendant, in open court, agreeing and consenting thereto." It is insisted that, notwithstanding the agreement of counsel, which is admitted by the brief, the order of transfer to Bell was void because the defendant was not present in court at the time. It does not appear in the record that the defendant was absent at the time the order was made, nor does it appear that he made any objection upon that ground until after the trial and verdict. He did, it is true, file a special demurrer in the Bell circuit court, and a motion to transfer the case back to Harlan county. But both these steps were taken upon the ground that the power of the court was exhausted by the retransfer of the case to Harlan; that the Harlan court had no jurisdiction to transfer to Bell, and the Bell court had no jurisdiction to try the case.

It is unnecessary to consider what would be the proper rule in such a case, had the objection been made in proper time, for no objection was made upon that ground; and we think appellant by his subsequent conduct ratified and confirmed the action of his counsel, and that it is too late after the verdict to make the objection.

It is also objected that the order is void under section 1102, Kentucky Statutes, which provides that "there shall not be more than one order of removal of the same cause at the instance of the same party, nor shall the court entertain more than one application for a removal of a cause by the same party." On the former appeal we directed the order of removal to Letcher to be set aside. When that was done by transfer of the case back to Harlan, it was as if there had never been an order of removal. The case then stood upon the original application by the Commonwealth to remove the case from Harlan county, and it was so removed. We are unable to see that the case of Smith v. Com., 95 Ky., 325 (15 R., 637), (25 S. W., 106), has any application to the question here presented. Counsel's mistake is in supposing that the present case went back to Harlan on the motion of the Commonwealth's attorney, merely. It went back to Harlan in obedience to the direction of this court.

No ground is stated in the brief upon which the motion in arrest of judgment should have been sustained, and an examination of the indictment does not disclose any. We suppose the motion was based upon the ground of lack of power to order the transfer. This question has already been disposed of.

The next objection is to the instruction by which the jury were told: "If you find him guilty of manslaughter, you will fix his punishment at confinement in the State

penitentiary for not less than two years, or more than twenty-one years, in your discretion." It is insisted that, because the word "or" was used in place of "nor," the jury were, in effect, limited to a choice between a 2-year sentence and a sentence for 21 years, and were not left at liberty to fix the penalty at any number of years between 2 and 21 years. If the jury had felt bound by the hypertechnical construction which counsel contends must be placed on this language, they would have been required to fix the punishment at more than 21 years if they did not fix it at 2 years. This they did not do. They could not, therefore, have been misled in the way suggested by counsel. The language used is perfectly understandable by any person of ordinary intelligence. We are bound to assume that the jurors were persons of ordinary intelligence. When the meaning of the language used is perfectly plain, courts will not reverse for mere bad English or ungraceful diction. The day of such matters has passed.

The next objection is to the admission of the dying declaration of Day, and the subsequent failure to exclude it on motion. From the testimony it appears that Day had expressed a belief that he was going to die, and made a statement of the facts relating to the killing. We may assume that the mere expression of belief that he was going to die did not show that he made his statement in the immediate expectation of death, and that therefore the statement was not admissible as a dying declaration. But subsequently he stated that he could not live over an hour, and, being asked to make a statement, said that he had made a statement previously, and had stated how it was, whereupon the witness said: "I will go over it now as you have given it to me, and, if I misquote it, you correct me." The witness then went over the statement previously made, and the

Smith v. Commonwealth.

dying man corrected him in one expression. It seems to us plain from the testimony that realizing that he was in the immediate presence of death, and less than an hour before his death actually occurred, he gave his assent in words to a statement made by him a short time before of the circumstances of the killing. We do not understand that any particular form is required for a dying declaration, or even that it must be expressed in spoken or written words. It would seem that a dying man, if conscious of his condition, might, though speechless, point out his slayer, in answer to a question, and that the gesture would be admissible as a dying declaration. It would go to the jury for what it was worth as testimony. It would be competent, and the jury could determine its weight. And so in this case, though the assent to and confirmation of the statement previously made may not be as impressive, and may not carry as much weight, in our minds or the minds of the jury, as if, when conscious of impending dissolution, he had again made the statement, nevertheless it was competent to go to the jury, and the jury have given it the weight to which, in their opinion, it was entitled.

It is also objected that the court excluded from the jury certain testimony that, from the demonstrations of Day and his manner of expression, the witness believed Day was about to hurt appellant. William v. Com., 90 Ky., 598, (12 R., 525), (14 S. W., 595), is relied upon. In that case it was held competent for the accused to state his belief that he was in danger. His belief that he was in danger is a fact. His statement of the existence of that belief is evidence of that fact. It is one of the facts necessary to make out a case of self-defense. There could be no testimony more competent of the existence of the belief than the statement of the man in whose mind the belief existed. If the jury

believed his statement, the statement established one of the necessary facts to justify the killing.   Any fact which justified him in holding that belief—any circumstance of position or menace or language which showed the belief to have been reasonable, under the circumstances—would tend to corroborate his statement of his belief in the danger.   But what any bystander believed is incompetent, because it shows nothing.   It does not show what the accused believed; nor is it a fact from which the belief of the accused can be inferred, for the accused could not know what was passing in the mind of the bystander, and the bystander's belief could not operate to cause a belief in the mind of the accused.   We are unable to attach much weight to this contention.

For the reasons given, the judgment is affirmed.