## Clair v. Commonwealth.

(Decided Feb. 23, 1937.)

A. H. PATTON for appellant.

B. M. VINCENT, Attorney General, and W. Owen Keller, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, John Clair, was indicted for the

murder of Joe Greenwell, and, on nis trial, was found guilty of manslaughter and his punishment fixed at confinement in the state penitentiary for a period of twenty-one years. He seeks a reversal of the judgment chiefly on the ground that the verdict is flagrantly against the evidence.

The homicide occurred at Wilhurst in Breathitt county on the evening of November 3, 1935, in front of a dance hall owned by Caesar Hurst. A dance had been in progress during the night, and the deceased, his wife, the appellant, and twenty-five or thirty other persons were present. Most of the crowd, including appellant and deceased, became intoxicated, and at about 2 o'clock in the morning the crowd began to disperse. Greenwell had parked his automobile across the road from the dance hall, and Mrs. Greenwell had entered the automobile before the difficulty resulting in the homicide occurred. She testified that she saw appellant staggering across the road calling Pruda Banks, a young woman who had attended the dance. He approached the car and she told him Pruda was not there. He began cursing and was in the act of reaching his hand in the car when Greenwell said: "Don't lay your hand in there, John, Pruda Banks is not in there, that's my old lady." Appellant cursed and threatened to kill Greenwell, and Greenwell shoved him away. Thereupon he struck Greenwell on the head with a cane, or pistol, and fired two shots. As Greenwell sank to the ground, he drew his pistol and fired one shot, and appellant then fired two or three more shots. Greenwell was shot five times, and four of the bullets entered his left chest. Appellant was struck by one bullet, and was severely wounded. The deceased had a .30-caliber Luger automatic pistol, and appellant a .45-caliber Smith and Wesson revolver. Plummer Hollon testified that his automobile was parked in front of the dance hall, and that when he was about to leave appellant walked up and asked if Pruda Banks was in the car. He was told that she was not there, but seemed unconvinced and someone struck a match to enable him to see the occupants of the car. He then walked across the road to a car, and the witness heard him say: "Pruda, get out of there," and some one said: "John, that's my old lady." Almost immediately a woman screamed, and several shots were

fired. The first shots were fired from a large pistol, and they were followed by the report of a smaller pistol. Harry L. Salmon lived about 600 feet from the dance hall, and was awake and heard the shooting. He stated that he noticed a difference in the reports of the two guns, and when asked which gun fired first, he said: "The first two were the loud report, then the third shot was a smaller gun, the way I heard it." Appellant testified that after he left the dance hall he saw Plummer Hollon and asked him if Pruda Banks was in his car. Hollon told him that she was not in the car, and he walked across the road with Frank Terrill. Greenwell came up, started an argument, and drew his pistol and fired at appellant two or three times, one of the bullets striking him in the side. He then drew his pistol and shot Greenwell. He was corroborated by several witnesses who testified that the deceased fired the first shot.

The evidence as to who was the aggressor was in direct conflict. According to the testimony of Mrs. Greenwell, the appellant was the aggressor, and the homicide was not justifiable. Her testimony is corroborated to some extent by the testimony of two other witnesses. It may be conceded that the preponderance of the evidence supports the appellant's theory of self-defense, but the credibility of witnesses must be determined by the jury, and the verdict of a properly instructed jury will not be disturbed because it believed one set of witnesses rather than another. Bailey v. Com. 236 Ky. 126, 32 S. W. (2d) 725; Couch v. Com., 227 Ky. 190, 12 S. W. (2d) 285.

Most of the proof showed that the shooting occurred at a point on the side of the road where the deceased's automobile was parked, and that after the shooting his body was lying near his automobile. Some of appellant's witnesses testified that the body was lying at another point several feet away, and, in rebuttal, the commonwealth introduced Eric Hatton, who contradicted the testimony of these witnesses as to the location of the body. Appellant complains of the introduction of this testimony on the ground that it should have been introduced in chief and not in rebuttal. There was no issue as to the location of the body until appellant introduced his proof. Under the circumstances, the evidence

of which complaint is made was real rebuttal evidence, and the fact that it might have been introduced in chief did not preclude its admission in rebuttal.

After appellant had testified, D. B. Pelfrey was introduced by the commonwealth and asked if he was acquainted with appellant's general moral reputation in the community where he lived from what the people said about him who knew him. He answered that he was, and that appellant's reputation was bad. Appellant complains of the admission of the evidence because the proof of character was not limited to the time of the commission of the offense. White v. Com., 80 Ky. 480, 484, and Allen v. Com., 134 Ky. 110, 119 S. W. 795, 20 Ann. Cas. 884, are cited, but in each of those cases the defendant introduced evidence as to his good character for the purpose of disproving his guilt, and the commonwealth then introduced evidence of his bad character, and when character evidence is introduced for this purpose, it must be limited to the reputation up to the time of the discovery of the crime with which the accused is charged. Unless the defendant attempts to show his general good character by affirmative evidence, the commonwealth cannot introduce evidence of his bad character as substantive evidence bearing upon the question of guilt. In the instant case, the appellant did not attempt to show his general good character, and the evidence of which complaint is made was introduced for the purpose of affecting his credibility as a witness and not as conducing to prove his guilt of the crime charged. Evidence heard for the purpose of affecting a defendant's credibility as a witness should be directed to the time he testifies, and a reasonable period theretofore. Shell v. Com., 245 Ky. 223, 53 S. W. (2d) 524.

When a defendant offers himself as a witness, he is subject to impeachment in the same manner as any other witness. In Steele v. Com., 192 Ky. 223, 232 S. W. 646, 649, it was said:

"In order to impeach a witness the evidence of bad character should be directed to the time of trial, and to this end, under proper circumstances, evidence of previous bad character is competent. While evidence of bad character at a time previous may tend to show the character of the witness at the present time, it should be admitted with caution.

The evidence of bad character at a time long anterior to the day of trial should not be admitted until a basis is laid by other proof tending to show that the character is then bad.''

The contention that the inquiry as to the character of appellant should not have been extended beyond the time of the discovery that the offense had been committed cannot be sustained.

No complaint is made of the failure of the court to admonish the jury as to the purpose of the impeaching testimony, but, in the absence of a request for such an admonition, there was no error in this respect. As pointed out in Rogers v. Com., 264 Ky. 187, 94 S. W. (2d) 345, there is some confusion in the opinions of this court as to the duty of the trial court to admonish the jury as to the purpose for which testimony of this character is introduced. The rule announced in some of the early cases, that the duty to so admonish the jury was mandatory, was based upon the theory that such an admonition was in the nature of an instruction on the merits of the case, and therefore must be given by the court under the rule that it is its duty to give the whole law of the case whether requested or not. In Ochsner v. Com., 128 Ky. 761, 109 S. W. 326, 33 Ky. Law Rep. 119, it was held that an admonishment as to the purpose of impeaching testimony is not an instruction, as defined by section 225 of the Criminal Code of Practice, and therefore need not be in writing and is not included in the rule requiring the court in criminal trials to give the whole law of the case. That being true, the defendant must call the attention of the court to the alleged error, and if the court refuses to admonish the jury, he must save the point by an exception. There is an intimation in some of the opinions, particularly the earler ones, that a mere objection to the evidence is sufficient, but the proper rule is that a specific request for an admonition should be made. The evidence is competent, and an objection to it should be overruled. Up to this point no error has been committed. If the defendant desires to have the effect of such evidence limited, he should request the court to give the proper admonition, and if the court then refuses to admonish the jury, he must except to the ruling in order to save the question for review. In Haywood v.

Com., 161 Ky. 338, 170 S. W. 624, 626, the defendant was asked on his cross-examination if he had not been confined in the state penitentiary, and he answered that he had. One of the errors assigned was the failure of the court to admonish the jury as to the legal effect of this evidence. The court said:

"It is now insisted that when this answer was made the court should have admonished the jury that this evidence was admitted solely for the purpose of impeaching appellant as a witness. Doubtless the trial judge would have so admonished the jury if his attention had been called to it at the time, but the failure of the court to so admonish the jury cannot be relied on as error unless the attention of the court has been drawn to the matter by a request that the jury be so admonished."

In Stigall v. Com., 257 Ky. 342, 78 S. W. (2d) 22, evidence was introduced in rebuttal for the purpose of contradicting the defendant as a witness. His objection to the evidence was overruled, and he excepted. On the appeal, it was urged that the court erred in failing to admonish the jury as to its legal effect. This court said:

"This evidence having been introduced in rebuttal, it may have been proper for the court to have admonished the jury of its purpose; but the record does not disclose that appellant asked the court to admonish the jury, and for that reason appellant cannot now complain. The court is under no obligation to admonish a jury with respect to the purpose of evidence, when it is competent for any purpose, unless requested to do so by the complaining party."

See, also, Fry v. Com., 259 Ky. 337, 82 S. W. (2d) 431; Gregory v. Com., 257 Ky. 438, 78 S. W. (2d) 327; Tincher v. Com., 253 Ky. 623, 69 S. W. (2d) 750.

The rule requiring the defendant to request the court to admonish the jury as to the effect to be given to impeaching testimony provides for a fair practice on this subject. As was said in Ochsner v. Com., supra, "If the trial court's attention were called at the time to what is frequently a mere omission, it would have been corrected. To allow reversals for such lapses is to put a premium upon sharpness, rather than tend to the just and fair administration of the law."

The appellant criticizes certain remarks made by the commonwealth's attorney in his closing argument to the jury, but it does not appear that any of them were prejudicial to his substantial rights. His chief criticism is directed to the following statement:

"Let's do our duty and if the Governor of our state wants to turn this man loose and discharge him, we can say we have done our duty and let the Governor pardon him if he wants to."

The court sustained an objection to the statement, and instructed the jury not to consider it. But, even if the objection had been overruled, it would not have been prejudicial. We have refused to reverse judgments of conviction where far more objectionable statements were made. Lee v. Com., 262 Ky. 15, 89 S. W. (2d) 316; Moore v. Com., 223 Ky. 128, 3 S. W. (2d) 190.

Appellant finally complains of instruction No. 1, because it did not follow the language of the indictment and require the jury to believe that Joe Greenwell died within a year and a day after the shooting. This novel contention is without merit. The shooting occurred November 3, 1935, and the evidence showed that Greenwell died instantly. The trial was held September 18, 1936, less than a year after the homicide occurred. In Early v. Com., 70 S. W. 1061, 1062, 24 Ky. Law Rep. 1181, a similar contention was made, and the court said:

"Death resulted within less than five minutes after deceased received the wounds, and there was no occasion for submitting the question as to whether he died within one year and a day after being shot."

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed. Whole court sitting.